In the Matter of BOARD OF EDUCATION OF THE CLARKSTOWN CENTRAL SCHOOL DISTRICT, Respondent-Appellant, v GORDON M. AMBACH, as Commissioner of Education, et al., Appellants-Respondents.

Third Department, December 8, 1983

**APPEARANCES OF COUNSEL**

*Robert D. Stone* (*James H. Whitney* of counsel), for Gordon M. Ambach, appellant-respondent.

*James R. Sandner* (*James J. Brady* of counsel), for New York State United Teachers, appellant-respondent.

*Lexow & Jenkins, P. C.* (*Warren E. Berbit* and *Ira M. Emanuel* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

CASEY, J.

When certain teachers employed by petitioner school district engaged in an eight-day illegal strike during the month of October, 1980, the district computed their per diem strike penalties at a rate of 1/183 for each day of unauthorized absence, based on the actual 183 school days in the 1980-1981 school year. The result thus calculated

was doubled and imposed as a penalty, pursuant to section 210 of the Civil Service Law (Taylor Law). Four of the teachers, on behalf of themselves and others similarly situated, appealed to the Commissioner of Education who determined that the district should have used a rate of 1/200 of their annual contract salary, as required by subdivision 3 of section 3101 of the Education Law, rather than the rate of 1/183. The commissioner also concluded that no evidence supported the district's further contention that the 1/183 rate had been agreed upon by the teachers in their collective bargaining agreement. The commissioner's ruling was predicated on his interpretation of subdivision 3 of section 3101 of the Education Law, which defines "salary" as "the amount of compensation that is to be paid to a teacher for services rendered during the full ten months period that the public schools of the district are required by law to be in session during any school year", and further provides that "[f]or purposes of prorating the salary of a teacher not rendering all the service required of teachers during such period, the monthly rate for the services rendered shall be at least one tenth of the salary and the daily rate at least one two-hundredth of the salary".

All the parties have generally agreed that a literal application of the statute would, in many instances, create unjust and unreasonable results, since not all months in the school year contain 20 working days (see *Matter of Swaim,* 9 Ed Dept Rep 23). Therefore, in order to interpret the statute reasonably, the commissioner applied the so-called "Huntington Formula"*, adopted by the commissioner in *Matter of Swaim (supra)*, to arrive at a rate of 1/200 under his interpretation of the statute. Dissatisfied with this ruling, the district instituted this CPLR article 78 proceeding to annul, or at least modify, this determination.

Special Term concluded that the application of the Huntington Formula by the commissioner to the teachers in this case produced salary figures for the month of October,

---

* The Huntington Formula requires a teacher absent without authorization more than half of the working days in a month to be paid 1/200 of annual salary for each day worked, but if a teacher is absent fewer than half of such working days he or she should be paid his or her monthly salary less 1/200 of annual salary for each day of such absence.

1980 which did not provide a daily figure for days worked by those teachers in that month which is at least 1/200 of the compensation to be paid to each of them for services rendered during the full 10-month period and, therefore, violated the statute. For that reason, the determination was annulled and the matter remitted to the commissioner for further proceedings. Special Term further found that, absent a contractual provision setting the rate of 1/183, the commissioner properly determined that the district was precluded from resorting to the collective bargaining agreement between the teachers and the district to support the rate of 1/183 which it utilized.

We reverse that portion of the judgment which found the commissioner's application of the Huntington Formula irrational and annulled the determination. Although the Huntington Formula has been criticized for producing unjust and inequitable results in certain situations (see *Matter of Plainedge Federation of Teachers,* Supreme Ct, Nassau County, Sept. 22, 1980, OPPIDO, J.), none of those situations is present here. In this case, as in *Matter of Swaim (supra)*, there were more than 20 working school days in October, 1980 and these teachers all worked more than half of the required working days. The commissioner determined that in such case the statute must be interpreted to require a deduction of 1/200 of a teacher's annual salary for each of the days of unauthorized absence (see *Matter of Mattis,* 16 Ed Dept Rep 323). That deduction in a situation where the teachers have worked more than half of the required working school days in a month having more than 20 working days is favored even in *Matter of Plainedge Federation of Teachers (supra)*, wherein the court stated that when there are more than 20 working days in the month and where the teachers work more than one half the days in a month and are absent for the remaining working days, a reasonable interpretation of the statute requires a "deduction of one two-hundredths of his annual salary * * * for each of the days of unauthorized absence".

The rationality of the commissioner's interpretation, as applied in this case where an unauthorized absence of eight days occurred in October, 1980, a month containing

22 working days, can be shown by applying the ruling to a teacher earning $20,000 per year. Under the statute, the minimum monthly rate would be $2,000 (1/10 of the salary), while the minimum daily rate would be $100 (1/200 of the salary). Applying the commissioner's Huntington Formula, the teacher's minimum monthly salary of $2,000 for October, 1980, would be reduced by $100 for each day of unauthorized absence, a total of $800. Such a teacher would, therefore, receive $1,200 for the month of October, 1980. If there were no other unauthorized absences for that school year, the yearly salary, as reduced, would be $19,200 ($2,000 for nine months plus $1,200). Using the hypothetical 200-working day school year upon which the statute is based, such a teacher would have worked 192 days, taking into account the eight-day absence and, thus, the minimum daily rate of $100 per day described above would be maintained.

Having concluded that the commissioner's interpretation of the statute as applied in the case at bar is not irrational, further judicial inquiry is precluded (*Matter of Pell v Board of Educ.*, 34 NY2d 222). We agree with Special Term that there is a rational basis for the commissioner's further determination that the collective bargaining agreement did not establish the daily rate of 1/183 of the teachers' salaries. The commissioner's determination should, therefore, be confirmed in its entirety.

The judgment should be modified, on the law, by deleting the second and third decretal paragraphs and substituting therefor a provision confirming the determination and dismissing the petition, and, as so modified, affirmed, without costs.

MAHONEY, P. J., MAIN, MIKOLL and YESAWICH, JR., JJ., concur.

Judgment modified, on the law, by deleting the second and third decretal paragraphs and substituting therefor a provision confirming the determination and dismissing the petition, and, as so modified, affirmed, without costs.