In the Matter of JANET L. BARNER et al., Appellants-Respondents, v JEFFERSONVILLE-YOUNGSVILLE CENTRAL SCHOOL DISTRICT, Respondent-Appellant.

Third Department, May 8, 1986

## APPEARANCES OF COUNSEL

*Bernard F. Ashe (Kevin H. Harren* of counsel), for appellants-respondents.

*Schadt & Schadt (Fredrick H. V. Schadt, Jr.,* of counsel), for respondent-appellant.

## OPINION OF THE COURT

YESAWICH, JR., J.

Petitioners, teachers in respondent school district, took part in a 15-day "job action" from April 30 to May 18, 1984. They do not dispute a finding by the Public Employment Relations Board that their activity constituted a strike, conduct prohibited by the Taylor Law *(see,* Civil Service Law art 14). A public employee engaging in a strike may be punished therefor "pursuant to the procedures" contained in Civil Service Law § 210 (Civil Service Law § 210 [2] [a]). At issue is whether respondent complied with those procedures before subjecting petitioners to the monetary penalty of deducting from each of their paychecks two days' pay for each day of the strike, and, if so, whether that penalty was correctly calculated.

Two days before the strike, respondent's chief executive officer, its Superintendent of Schools *(see,* Civil Service Law § 201 [10]), suffered a massive heart attack and was incapacitated. To fill the void, respondent's Board of Education obtained temporary assistance from the District Superintendent, Gary Moore. On April 30, May 8 and May 16, 1984, Moore sent notices to petitioners informing them of his determination that they had violated Civil Service Law § 210 by participating in a strike. These notices identified 12 specific days of strike activity occurring on and between April 30 and May 15,

1984 and advised petitioners of their right, pursuant to Civil Service Law § 210 (2) (g), to object to Moore's determination. No notices were issued, however, with regard to the other three days of the job action, i.e., May 16 through May 18, 1984. On May 30, 1984, each petitioner received a written statement of his per diem wage, the total number of days deemed to be illegal absences as a result of the strike, the deductions made from their paychecks of May 15 and May 30, 1984, and a notification that respondent would deduct an additional penalty of one day's wage for each day of illegal absence from future salary payments.

Petitioners chose to forego their right, under Civil Service Law § 210 (2) (g), to object to Moore's determination. Instead, later in September 1984, each petitioner served respondent with a notice of claim pursuant to Education Law § 3813, and on October 15, 1984, petitioners commenced the instant CPLR article 78 proceeding. In their first cause of action, petitioners claim that the sums deducted from their earnings due to the strike should be reimbursed because the notices dated April 30, May 8 and May 16, 1984 were null and void in that they were issued by someone other than respondent's chief executive officer, who is the sole officer authorized by statute to determine whether a strike has occurred (see, Civil Service Law § 210 [2] [d], [e]). As a second cause of action, petitioners assert that respondent furnished them with no notice that a determination had been made that the last three days of the job action constituted a strike. Therefore, a refund of the salary loss associated with those particular days is sought. Petitioners' final cause of action challenges respondent's computation of their lost wages.

In its answer, respondent raised as affirmative defenses, that petitioners' failure to make objections pursuant to Civil Service Law § 210 (2) (g) precluded their article 78 proceeding and, alternatively, that the proceeding was time barred as more than four months had elapsed since the April and May 1984 notices of strike determination were issued and the service of the petition in October 1984. Special Term concluded that respondent's notices conformed to statutory requirements and therefore dismissed petitioners' first two causes of action. With respect to the third and final cause of action, the court directed respondent to recompute the penalties in accordance with the "Huntington formula" adopted by the Commissioner of Education in *Matter of Swaim* (9 Ed Dept Rep 23). Both parties appeal.

■ An article 78 proceeding against a body or officer must be brought within four months after the determination to be reviewed becomes final (CPLR 217). Determinations that public employees breached the Taylor Law by causing, instigating, encouraging or condoning a strike become final upon completion of the procedures provided for in Civil Service Law § 210 (2) (d). If the employee files no objection within 20 days of the determination, it is then deemed final (see, Matter of De Lury v Beame, 49 NY2d 155, 159).

Petitioners filed no objection when they received respondent's three notices, dated April 30, May 8 and May 16, 1984; accordingly, those notices became final 20 days later on May 20, May 28 and June 5, 1984, respectively. Therefore, because more than four months had elapsed before petitioners initiated this article 78 proceeding in mid-October 1984, their challenge to those determinations, which pertain to 12 of the 15 days of strike activity, is time barred.[1]

■ In the parallel attack on the validity of the strike determination notices themselves, petitioners' assertion that they are void because they were executed by someone other than the Superintendent of Schools is also unpersuasive. While Civil Service Law § 210 (2) (e) places responsibility for furnishing violation notices to employees upon the public employer's chief executive officer, the paramount purpose behind this provision—namely, prompt notice—suggests that the Legislature's identification of the issuing agent is directory, not mandatory. Significantly, petitioners nowhere allege that they suffered any prejudice to their rights as a result of respondent's departure from the literal language of the statute. Furthermore, it is worth noting not only that Moore, who acted instead of the chief executive officer, was the latter's superior, but also that petitioners concede the efficacy of Moore's determination to the effect that they had overstepped the boundaries of the Taylor Law. Special Term found no impropriety in the course respondent followed here; nor do we.

■ Regarding the last three days of the job action, respondent contends that its May 30, 1984 notice to petitioners met the requirements of Civil Service Law § 210 (2) (e) and,

---

1. Parenthetically, petitioners' filing of a notice of claim on September 14, 1984 "neither toll[s] the Statute of Limitations nor [begins] anew the time within which review [can] be sought" (Matter of Miller v McGough, 97 AD2d 416).

thereby, triggered the four-month Statute of Limitations. We disagree. Although that particular notice recited that the total number of strike absences was 15, it neither specified the dates of the violations nor informed petitioners of their right to object.

Nonetheless, petitioners' second cause of action accrued on that day, May 30, 1984, when respondent made the deductions in their salary. Their May 30, 1984 paychecks reflected the loss of income due to 15 alleged illegal absences before that date. At that juncture, their grievance became ascertainable and qualified for judicial review (see, e.g., *Matter of De Groat v New York State Higher Educ. Servs. Corp.,* 90 AD2d 616, 617; *Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn.,* 90 AD2d 605, 606). Thus, since this article 78 proceeding was not commenced until more than four months thereafter, dismissal of the second cause of action as untimely was also appropriate.

For the same reason, petitioners' third cause of action is barred to the extent that it questions respondent's calculation of the amount deducted from their May paychecks because of the strike. Still viable, however, is the exception petitioners take to the amount of the second penalty deduction reflected in their payroll checks of June 15, 21 and 22, 1984. Commencement of the petition *sub judice* by October 15, 1984 preserved that claim.

The election by petitioners to forego their initial right to object to the strike determination notices does not, as respondent urges, foreclose further judicial scrutiny. Nevertheless, it is true that Civil Service Law § 210 (2) (g) affords public employees a mechanism for challenging the correctness of a chief executive officer's decision that a strike violation occurred, his designation of the strike dates, as well as his conclusion as to who participated in the infraction (*cf. Matter of Lawson v Board of Educ.,* 35 AD2d 878, *mot to dismiss appeal granted* 28 NY2d 993, *appeal dismissed* 404 US 907). Petitioners do not dispute this. They urge instead that their claim in the third cause of action pertains to the formula employed in arriving at the amount of their salary deductions, a matter which was not at all apparent at the time the strike determinations were reached.

Civil Service Law § 210 (2) (f) controls resolution of this issue. It authorizes a public employer to "deduct from the compensation of each such public employee an amount equal

to twice his daily rate of pay for each day or part thereof that it was determined that he had violated this subdivision". Although petitioners were required to work 180 days during the school year, respondent merely deducted ½₀₀ of their annual salary for each day of illegal absence. In like fashion, respondent computed the two-for-one penalty exacted from petitioners in late June 1984.

■ We find respondent's method both fair and consonant with the statute. In *Matter of Board of Educ. v Ambach* (97 AD2d 188, *affd* 63 NY2d 780), this court focused on the pivotal concern in cases of this nature, the effectiveness of the formula in respecting and maintaining a teacher's per diem wage. Adapting the example used in that case to this situation, we assume that a teacher earning $20,000 annually who is compensated over a 10-month period comprised of 200 working days, would receive the minimum monthly rate of pay of $2,000 and the per diem rate of $100. In May 1984, the month in which petitioners' illegal absences totaled 14, the teacher whose yearly income is $20,000 would, under respondent's formula, see his monthly paycheck reduced by $1,400, leaving a salary for that month of $600 ($2,000 − $1,400). This would decrease the yearly salary, assuming no other illegal absences, to $18,600 (nine months at $2,000 plus one month at $600). That salary for working 186 days is precisely proportional to a teacher earning $20,000 over 200 days. By preserving the per diem wage rate of $100, respondent's methodology effectuates the mandate of Civil Service Law § 210 (2) (f).

In rejoinder, petitioners observe, quite correctly, that respondent's manner of calculation does not accord with the Huntington formula[2] *(see, Matter of Swaim, supra)*, a guide that has been criticized as occasionally yielding unjust and inequitable results *(see, Matter of Board of Educ. v Ambach, supra)*. But if respondent had employed that formula, unfairness and inequity is exactly what would have come about, for petitioners would have been reimbursed on the assumption that May had 20 working days, when in fact 22 days was the actual number. The unacceptable consequence is that petitioners would lose no pay for two days during which they took part in an illegal strike. Since that result obviously contra-

---

2. The portion of the Huntington formula pertinent here requires that a teacher absent without authorization for more than one half of the working days in a month be paid ½₀₀ of the teacher's annual salary for each day worked. Its application would entitle petitioners to at least ⁸⁄₂₀₀ of their salary for May 1984 rather than ⁶⁄₂₀₀.

venes the purposes of Civil Service Law § 210, it cannot be countenanced. Petitioners' third cause of action, therefore, should have been, and hereby is, dismissed.

MAIN, J. P., CASEY, MIKOLL and HARVEY, JJ., concur.

Judgment modified, on the law and the facts, without costs, by reversing so much thereof as ordered respondent to recompute the penalties imposed upon petitioners; petitioners' third cause of action is dismissed; and, as so modified, affirmed.